3:22-CV-1440-BJD-JBT

IN THE UNITED STATES DISTRICT COURT
Middle District of Florida
Jacksonville Division

LORENZO COLE

vs.

STATE OF FLORIDA,
CITY OF JACKSONVILLE, a subdivision state of Florida
JUDGE ELIA E. DERKE, JUDGE TATIANA SALVADORE,
HARRY SHORESTEINE / MELLISA NELSON - STATE ATTORNEYS,
PHILLIP BAVINGTON - ASST. STATE ATTORNEY, ASST. STATE ATTORN-
EY TRISHA DAEWOOD, LOUIS FROST / CHARLIE COFER - PUBLIC DEF-
ENDERS, PHILLIS WILEY, ASST. PUBLIC DEFENDER, SHERIFF
PATRICK IVEY, DETECTIVE CLAUDE KIRK, DETECTIVE T.J. CALD-
ERON, DETECTIVE M.J. COLLINS, DETECTIVE B.D. LANGLEY,
DETECTIVE S.J. ROA, OFC. CODY MIGNOGNA, OFC. COLTEN
M. VIAR, OFC. D.E. TORRES, AND OFC. LA I SPICER

COMPLAINT
FOR SPECIFIC PERFORMANCE OF PLEA AGREEMENT
& FOR INJUNCTIVE & DECLARATORY RELIEF

FILED 2022 DEC 29 PM 12:15 CLERK, US DISTRICT COURT MIDDLE DISTRICT OF FL JACKSONVILLE FLORIDA

## STATEMENT OF JURISDICTION

This action arises under the United States Constitution First, Fourth, Fifth, Sixth, Eigth, and Fourteenth Amendments.

### REQUEST
### JUDICIAL NOTICE

This District Court should take Judical Notice pursuant to Fed.R.Civ.P. of exhibits and pleadings filed in conjunction with districts previous case number: 2012 U.S. Dist. LEXIS 12013 along with the exhibits attached to this complaint in this case.

### ADDITIONAL NOTE

Due to an ongoing civil conspiracy by state actors mentioned below, a secret route to get this pleading out of the jail had to be taken.

All or Any weaknesses of this complaint belongs to the Defendants and the dungeon-like way of living they have kept the plaintiff in for nearly 23 years.

If the District Court can order some measure of RESTRAINT to the Defendants, the Plaintiff could file additional copies of this summons and complaint on all other Defendants.

The Plaintiff will be referred to as Plaintiff, Defendant (in case below), or Petitioner (in cases below).

-1-

## CUSTOM, POLICY, OR UNWRITTEN, AND UNCONSTITUTIONAL REGULATIONS

Within the State Attorney's office, Public Defender's office, the Fourth Judicial County & Circuit court there is an unwritten regulation to:

1) Allow state attorneys to make felony plea agreements they won't carry out while placing them on misdemeanor probation
2) not allow state Defendant to withdraw misdemeanor pleas of no contest or guilty.
3) not allow public defenders to perform duties fulfilling of the Sixth Amendment right to effective counsel to withdraw pleas
4) participate in civil conspiracies to infringe upon plaintiff's due process, access to courts, and unreasonable seizures.
5) allow courts to deny good faith motions to withdraw pleas without filing denial order with Clerk of Courts
6) violate misdemeanor probations, despite knowing plaintiff/Defendant/user was released due to breached agreement of dropping felony lewd case.
7) use felony enhancement statutes to frighten plaintiff into plea agreement.
8) Deny all petitions related to reversing convictions surrounding preached plea agreements.

STATEMENT OF FACTS

# HISTORY 1: "BREACHED AGREEMENT"

1) In 1991, the City of Jacksonville (COJ) built and operated a larger jail facility known as the Jacksonville Pretrial Detention Facility (PDF) located at 500 E. Adams Street, Jacksonville, Florida 32202, as its smaller jail was torn down.

2) The Jacksonville Sheriff's Office (JSO) was responsible for securing & housing about twenty-five hundred (2500) inmates back then. Today the facility houses approximately six-thousand (6000) inmates.

3) In the year of 1999, petitioner, despite some juvenile history and a few stints in jail as an adult, was an Olympic Boxing hopeful for USA Olympic Boxing Team for the 2000 Olympic Games in Sydney, Australia.[1]

4) If this noble quest wasn't a sign that petitioner was fighting to overcome a street-tough hood-life, then maybe the fact that he was boxing for the local Jacksonville Police Athletic League (PAL) on 33rd & Canal Street is a sign.

5) After making hotel accommodations and plane fare reservations to attend the next week-long National Tournament with police director of PAL for Philadephia, Pennsylvania, an officer of PAL notified petitioner that he had an arrest warrant for Lewd, Lascivious Conduct or Exhibition on a Victim 16 years and younger (case no. 2000-1363-CFA, State of Florida vs. Lorenzo Cole) on Jan. 20, 2000.

6) Additionally, the officer informed petitioner he had an unrelated arrest warrant for Child Abuse for a fight between petitioner and his younger brother who was seventeen (17) at the time. Petitioner was twenty-five (25) years old at that time.

7) Petitioner then explained to both PAL Director and Officer his side of the cases in mitigation, yet he was arrested and both officers responded, "We'll explain to the local State Attorney's Office ... and we know people there ... we'll get you out ... ...if not this tournament, we'll make the last one that will get you at the Olympic

case 2021-CF-13103-AXXX-MA

---

[1]. see May 7, 2002 sentencing transcripts by Judge Lance M. Day, or May 6, 2005 transcripts by _____ 2 sentencing Hearing for Judge Dearing.

STATEMENT OF FACTS

Center in Denver, Colorado to make the Olympic Trials for 2000 USA Olympic Boxing Team.

8) Consequently, two to three weeks later, petitioner's mother received a phone call from an Assistant State Attorney from then Harry Shorestein's State Attorney's Office, introducing the following plea agreement:

> "If Lorenzo will take time-served for Domestic Battery which we'll bump-down from Child Abuse for the fight between him and his younger brother, we'll drop the Lewd & Lascivious Conduct w/ Minor charge and he'll go home on 11 months misdemeanor probation with early termination. (Case No. State of Florida vs. Lorenzo Cole 2000-4552-MMA)

9) Petitioner's mother conveyed this specific plea agreement to him over jail phone. Then, petitioner was called for "bump-down" court, where the County Court Judge, Honorable Elis E. Derke presided on Feb. 9, 2000.

10) Prior to entering the courtroom petitioner's misdemeanor court-appointed counsel for Louis Frix Phillis Wiley and Asst. State Attorney Trisha Drewood met him in a private cell setting and asked him if he received the message left to his mother.

11) Petitioner agreed he had and Ms. Wiley reiterated the same prior to them all entering the J-1 courtroom.

12) Petitioner specifically asked Ms. Wiley was the Lewd charge dropped and she confirmed that it indeed was.

13) Petitioner tendered his plea in court and was placed on 11 months misdemeanor probation with Salvation Army for domestic battery, believing he was going home that day and believing the PAL Director and Officer Varner came through on their promise to help him.

-3-

## STATEMENT OF FACTS

14) However, when petitioner awoke to find himself still in jail, he summoned an officer who checked the computer to find that the Lewd & Lascivious Conduct charge was still pending and showing an arraignment for Feb. 16, 2000 — evidence that the specific plea agreement had been BREACHED by the State Attorney's Office.[2]

15) On Feb. 16, 2000, and in the Fourth Judicial Circuit Court, petitioner declined the State's offer of 1 year county jail followed by 5 years probation for the charge — at arraignment. (case no. 2000-1363-CFA)

16) At pretrial, on Feb. 23, 2000, upon court-appointed conveying the same state offer, petitioner yelled, "...tell the Asst. State Attorney to give that 1 year with 5 years probation to her momma!"

17) Counsel did convey this counter-offer.

18) Apparently angered, the Asst. State Attorney threatened to enhance petitioner's sentence to thirty (30) years, pursuant to Fla. Stat. § 775.084, if he did not tender plea that day.

19) Frightened, petitioner acquiesced to 1 year county jail followed by 3 years probation.

20) Little did he know, he was not eligible at that time for the sentence enhancement statute to be applied to his case.

21) Immediately afterwards, he wanted motions to withdraw his plea to the domestic battery case filed. Ms. Wiley (misdemeanor counsel), however, refused then visited him in jail, showing petitioner how to file his own motion to withdraw plea but incorrectly informed him to send motion to Judge Derke's Chambers (case 16-2000-1363-CFA-AXXX-MA Post-Conviction Motion for Relief/Specific Performance of Agreement) case no. 2000-4552-A

22) Judge Derke denied the motion based on timing constrictions but that denial is not on court file.[3]

---

2. Conveying the breached agreement meant absolutely nothing to the felony P.D., who in turn did absolutely nothing nor mentioned the specifics to the Circuit Court on record.

3. Petitioner filed a second Motion to Withdraw pursuant to Rule 3.850 upon completion of 1 year county time. He was later re-arrested and violated probation and sentenced to 5 years in prison. He was released 10/2013. (2008-13103-CFA State of Florida v. Lorenzo Cole) Also see exhibits in case no. 2012 U.S. LEXIS 12013

-4-

## STATEMENT OF FACTS

HISTORY 2: DESIGNATION & FLA. STAT. § 943.0435, 944.607(9)(2000)

23) Petitioner Cole was adjudicated guilty and convicted of "Lewd or Lascivious Conduct (Victim Under 16 years old) by offender 18 years or older; F.S. 800.04(6)(b)" in Duval County, FL. The case was reviewed by the Florida Department of Law Enforcement (F.D.L.E.) and it was determined that Cole is required to register twice a year (May and November) as a Sexual Offender on 10/21/2000.

24) The Jacksonville Sheriff Office's (JSO.) Sheriff "DESIGNATED" Jacksonville Re-Entry Center (JREC) and its Law Enforcement Officers and Sex Offender Detectives of the Tracking Offender Unit to register felons and perform sex-offender registrations in the local Duval County area.

25) JREC is located approximately 9.5 miles (at 1024 Superior Street, Jacksonville, FL 32254) away from PDF.

26) JREC officers are certified in various disciplines and training courses by FDLE's Criminal Justice Training Commission* (CJTC) pursuant to Florida Statutes 943.03, to perform S.O. registrations, updates, etc.

27) Upon release from jail... petitioner had to comply with Fla. Statutes § 943.0435(4)(2000):

> ("Within 48 hours any change in the offender's permanent or temporary residence... the offender shall report in person to a driver's license office...")

§ 944.607(9)(2000):

> ("A sexual offender... who is under the supervision of the Department of Corrections but who is not incarcerated shall... register in the manner provided in § 943.0435(3),(4) and (5)")

---

*The Training Commission administrates, certifies, and revokes certifications of officers, instructors, and criminal justice training schools.

-5-

## STATEMENT OF FACTS

and § 943.0435(9) (2000):

("A sexual offender who does not comply with the requirements of this section commits a felony of the third degree...")

### HISTORY 3: "THE GIORGETTI CASE"

28) Then a Florida court case came about that should've promised change in the ordinary set up of City of Jacksonville's scheme (discussed above) in 2002. However, it did not.

29) In Giorgetti v. State of Florida, 821 So.2d 417 (Fla. 4th DCA 2002), the Fourth District Court of Appeals found that:

In Nov. 1992, Giorgetti was convicted of indecent assault and sentenced to two years imprisonment followed by seven years' probation. In March of 1997, Giorgetti probation status was changed to administrative probation, meaning that while the probationary term technically continued, Giorgetti was no longer required to contact his probation officer.

Thereafter, on April 30, 1999, Giorgetti probation status ended. Following the termination of probation, Giorgetti moved to a new address. Id. at 418-19.

He then came in contact with a police at his new address while officer was looking for another person on an unrelated matter. Id. at 419. After asking Giorgetti for identification and checking the computer system, Giorgetti was arrested and charged with failing to report his change of address as required in sections 943.0435 and 944.607(9) (2000). Violations of these registrations statutes are punishable as third-degree felonies.

Giorgetti pleaded not guilty to the charges, claiming he was not aware of the registration requirements, and he subsequently challenged the constitutionality of the sexual offender registration statutes based on the absence of a knowledge requirement. The trial court denied Giorgetti's pretrial constitutional challenge and at

-6-

## STATEMENT OF FACTS

trial the State asked for, and the trial court gave, a jury instruction explaining that the State was not required to prove that this statute had an element of knowledge or that Giorgetti intended to violate the statute. Giorgetti was convicted of violating the sexual offender registration statutes.

The Fourth District concluded the trial court erred in giving a special instruction absolving the State of the burden to prove guilty knowledge or scienter or mens rea in this prosecution for a criminal violation of the sexual offender registration statutes.

The Fourth District certified the same issue it resolved as a question great public importance to the Supreme Court of Florida.

In State v. Giorgetti, 868 So.2d 512 (2004), the Florida Supreme Court rephrased the question as:

Does the crime created by the sexual offender registration statute require the State to prove knowledge of the registration requirement by the offender as an element of the crime?

Florida Supreme Court answered the question in the affirmative, holding:
"The sex-offender registration statute provides no explicit guidance as to whether the legislative intended there to be a knowledge requirement for proving violation of the statute. The statutory provisions dealing with the sexual offender registration requirements simply contain no express direction." Id. at 513.

"... where there is no notice of the duty to register, due process to not allow a conviction for failing to register, actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." Id. at 514.

The Supreme Court agreed with the Fourth District as it construed knowledge requirements into the statutes.

-9-

## STATEMENT OF FACTS

### HISTORY 1: "THE 2004 AMENDMENT FLA. STATS. § 943.0435"

30) The State of Florida's Legislative Branch, its Supreme Court of Florida's Supreme Court Committee on Standard Jury Instruction, its Florida Department of Law Enforcement, and its Florida Department of Corrections appropriately made accomodations towards this precedental case by: (1) updating Florida Statutes Section 943.0435; (2) created & authorized new Standard Jury Instructions in respect to offenses of failure to register as sex-offender; (3) created new sex-offender registration forms in light of the s.b. acknowledgement of duty to register; and (4) while DOC released sex-offenders from state prisons complied with Fla.Stats.Sect. 944.606(2)(1), and Sect. 943.0435(1) and (11).

Here's a detailed breakdown:

31) First, the State's Legislature, at s.3, ch. 2004-371, amendments to Fla.Stats. became effective on July 1, 2004 whereby its substituted section "944.607" for "944.607(9)", and added designations 4(a).

In respect to the Giorgetti case, the legislature responded by amending also Fla.Stats. § 943.0435 and added designations 10(a) thru 10(d). Most relevant here is 10(c) which took from the Supreme Court's s.o. acknowledgement of duty ruling:

> An arrest on charges of failure to register when the offender has been provided and advised of his or her statutory obligations to register under s. 943.0435(2) ... A sexual offender charged with the crime of failure to register who asserts ... a lack of notice of the duty to register as a defense to a charge of failure to register shall immediately register as required by this section.

Then later there were statutory changes by the legislature in Chapter 2016-104, sections 1 and 3 and Chapter 2017-107, sections 1-2, Laws of Florida amending sections 943.043

-8-